UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| LUCINDA MORRIS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:20-CV-150-REW |
| | ) | |
| v. | ) | |
| | ) | OPINION AND ORDER |
| WALMART STORES EAST, L.P., et al., | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff Lucinda Morris alleges that she was injured after slipping on a "puddle of a slippery substance" while shopping in the Hazard, Kentucky Walmart on July 5, 2019. DE 1-3 at 4 ¶ 9. She sues Walmart and Jason Higgins, the manager of the store where the alleged injury occurred, for negligence. DE 1 at 1 ¶ 1. *See also* DE 1-2 at 2 (Affidavit of Jason Higgins). The issue now before the Court is not the underlying merit of Morris's allegation. It is whether the Court has jurisdiction over the dispute. Because Morris's claims arise under state law, this Court may only hear the dispute if each plaintiff is diverse from each defendant. Here, Plaintiff Morris and Defendant Higgins are both Kentucky citizens. Defendants, who removed, counter that Higgins was fraudulently joined to the suit. If true, he would not spoil diversity. However, on review, the Court finds Higgins a valid defendant. A defendant is fraudulently joined only if the plaintiff has no glimmer of hope to recover against him. Here, Morris may conceivably make a successful claim against Higgins under Kentucky state law. Therefore, Higgins is validly joined. The Court lacks jurisdiction and may not hear the suit. Accordingly, DE 8, Defendant's Motion to Dismiss is **DENIED** and DE 19 (Morris's remand motion) is **GRANTED**. Further, finding that

1

Defendants' effort at removal was not objectively unreasonable, Plaintiff's motion for attorney fees (DE 6) is **DENIED**.

I.      **Background**

On April 5, 2020, Morris sued Defendants Walmart Stores East, L.P. (Walmart) and store manager Jason Higgins (Higgins) (together, Defendants) in Perry Circuit Court[1] seeking damages for her injuries from the fall. DE 1 at 1.[2] Her claims arise under Kentucky law. DE 1-3 at 2-8.[3] On July 18, 2020, Defendants removed to federal court, within thirty days of learning, via Plaintiff's discovery responses, that the amount in controversy exceeded the minimum amount required for diversity jurisdiction. DE 1. *See also* 28 U.S.C. §§ 1332(a), 1446(b)(3).[4] In their notice of removal, Defendants argue that this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 (a) and (c) because "there is diversity of citizenship between Plaintiff and Walmart and the total amount claimed by Plaintiff exceeds the jurisdictional minimum of $75,000."[5] DE 1 at 1 ¶ 2. § 1332(a).

---

[1] Civil Action No. 20-CI-00153.
[2] Defendant Higgins does not dispute that he is the store's manager. DE 1-2 at 2 (Affidavit of Jason Higgins). The Complaint (DE 1-3) alleges his functions/duties at 5 ¶ 18, to include full maintenance and supervision with respect to premises safety.
[3] *See also* DE 26 at 2 ("[T]he elements of common law negligence have been pled against Defendant Higgins.").
[4] "[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant" of any "other paper from which it may first be ascertained that the case is one which is or has become removable." §1446(b)(3). Thus, the statute gives defendants smelling fraudulent joinder the option of moving first to dismiss the non-diverse defendant at the state level *and then* seeking removal to federal court. To avoid unnecessary duplication of litigation costs, that statute generally closes the window after a year has passed since the commencement of the action. §1446(c).
[5] DE 1 ¶ 7 ("This Notice of Removal is timely filed within thirty days of receipt of Plaintiff's discovery responses, which itemize alleged damages totaling at least $900,000.00."). Plaintiff disputes that sum. ("Plaintiff cannot speculate as to what a jury might award in the respective cases and therefore cannot aver that the amount in controversy does not exceed $75,000. . . . Defendants' amount in controversy burden is not met and is objectively in bad faith."). DE 10 at 7. Establishing the amount in controversy for jurisdictional purposes in Kentucky is complicated by the fact that "the rules of civil procedure expressly limit the extent to which plaintiffs can articulate a specific dollar amount that they seek to recover." *Hoop v. Wal-Mart Stores E., L.P.*, No. CIV. 13-115-

Diversity jurisdiction under § 1332(a) requires each plaintiff to be diverse from each defendant. If a single plaintiff shares state citizenship with a single defendant, there is no diversity jurisdiction. *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 492 (6th Cir. 1999).

Here, Defendant Walmart is, for diversity purposes, a citizen of Arkansas and Delaware.[6] But Defendant Higgins and Plaintiff Morris are both Kentucky citizens.[7] Accordingly, Higgins's presence in the suit destroys diversity. Defendants, while conceding that Higgins, like Morris, is a citizen of Kentucky, argue instead that the Court should disregard Higgins's citizenship because the lack of "colorable basis for Plaintiff's claim against him" means that he was "fraudulently joined to the action[.]" DE 1 at 2 ¶ 5. Echoing those same arguments, Higgins moved to be

---

GFVT, 2014 WL 1338704, at *2 (E.D. Ky. Mar. 31, 2014); *see also* Ky. R. Civ. P. 8.01(2). "When 'the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded,' removal is appropriate if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a)." *Hoop*, 2014 WL 1338704, at *3 (quoting 28 U.S.C. § 1446(c)(2)(A)(ii)). In her answer to Defendants' interrogatories, "Plaintiff states she will seek past medical expenses in an amount not to exceed $200,000[.]" (DE 14-1 at 8). Accordingly, Defendant has sufficiently demonstrated that the amount in controversy threshold is met. *See also Sanford v. Gardenour,* No. 99–5504, 2000 WL 1033025, at *3 (6th Cir. July 17, 2000) (holding that plaintiffs' admission in a rule 26 disclosure that damages could exceed $75,000 estopped them from arguing their case did not meet the monetary threshold). Morris's arguments here are curious, given the record. The Court sees the amount in controversy toggle as flipped.

[6] Defendants, at DE 1 ¶ 4, give Walmart's citizenship, for diversity purposes, as Delaware and Arkansas. *See also* 2 (Corporate Disclosure); Fed. R. Civ. P. 7.1.

[7] Proper citizenship allegations are foundational and should not involve guesswork. Here however, the record supports the conclusion that Morris and Higgins are both Kentucky citizens for diversity purposes. "'Citizenship' for purposes of the diversity statute is synonymous not with 'residence' but with 'domicile.'" *Kaiser v. Loomis,* 391 F.2d 1007, 1009 (6th Cir.1968). "To acquire a domicile within a particular state, a person must be physically present in the state and must have either the intention to make his home there indefinitely or the absence of an intention to make his home elsewhere." *Stifel v. Hopkins,* 477 F.2d 1116, 1120 (6th Cir. 1973). Jason Higgins resides and works in Kentucky. (DE 1-3 at 26). Plaintiff is an "adult resident of Hazard, Perry County, Kentucky." DE 1-3 at 2. She has lived in Kentucky for the past ten years. DE 14-1 at 2 (Plaintiff's Answer to Interrogatory No. 1). She does not dispute Defendants' description of her as a "citizen of Kentucky." DE 1 at 1. The removal papers allege citizenship, uncontested, and the Court accepts the substantiated descriptions.

dismissed from the suit. DE 8. Morris filed her response opposing Defendant Higgins's motion to dismiss. DE 10. She then filed a dovetailing motion to remand due to lack of subject matter jurisdiction. DE 18; DE 19.[8] Plaintiff also seeks attorney fees pursuant to 28 U.S.C. § 1447(c). DE 6. Defendants oppose the motion. DE 14. All discovery, at Walmart's urging, has been stayed pending resolution of Defendant's motion to dismiss. DE 13; DE 27.[9] The matter, now fully briefed, is ripe for review.

## II. Fraudulent Joinder Rejected

*A Finding of Fraudulent Joinder is Warranted Only if There Is No Reason to Believe that the Plaintiff Could Recover Against the Joined Defendant*

Because this dispute's only path to federal court is through diversity jurisdiction, Defendants may "avoid remand only by demonstrating that [Higgins] was fraudulently joined." *Jerome-Duncan, Inc. v. Auto-By-Tel, LLC*, 176 F.3d 904, 907 (6th Cir. 1999) (internal quotation omitted). Here, Defendant Higgins argues that "Plaintiff's complaint fails to state a colorable claim" and therefore he has been fraudulently joined to the suit. DE 8 at 1. Higgins has the burden here, and it is a heavy one. *Kent State Univ. Bd. of Trs. v. Lexington Ins. Co*, 512 F. App'x 485, 489–90 (6th Cir. 2013). A non-diverse defendant's joinder is fraudulent only if it is "clear that there can be no recovery [against that defendant] under the law of the state on the cause alleged or on the facts in view of the law." *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994) (internal quotation omitted). In other words, the removing party must show that there is no "colorable basis for predicting that a plaintiff may recover against [that defendant]." *Coyne*, 183

---

[8] The Court addressed Plaintiff's two motions to remand in DE 21, which denied the DE 18 motion without prejudice and established DE 19 as the relevant motion. The motion is briefed in full. DE 23; DE 26.

[9] This posture is confounding, that Walmart would invoke the Court's jurisdiction by removal and then seek to stay discovery in a case it vociferously claims should remain on the docket. The Court dislikes the antipodal strategy.

4

F.3d at 493. "If the plaintiff has even a 'glimmer of hope,' then any charge of fraudulent joinder fails and the Court must remand the case to state court for want of subject-matter jurisdiction." *Christensen v. ATS, Inc.*, 24 F. Supp. 3d 610, 613 (E.D. Ky. 2014) (internal citation omitted); *see also Hartley v. CSX Transp.*, 187 F.3d 422, 426 (4th Cir. 1999) ("Once the court identifies this glimmer of hope for the plaintiff, the jurisdictional inquiry ends."). "[T]he plaintiff's actual motive is irrelevant to the fraudulent-joinder inquiry." *Freitas v. McKesson Corp. (In re Darvocet, Darvon & Propoxyphene Prod. Liab. Litig.)*, 889 F. Supp. 2d 931, 936–37 (E.D. Ky. 2012) (citing *Jerome-Duncan*, 176 F.3d at 907). Because of the significant resources wasted by a dispute's improper admission into federal court, federal jurisdiction should be construed narrowly when evaluating removal. *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 550 (6th Cir. 2006). "[A]ny doubts regarding federal jurisdiction should be construed in favor of remanding the case to state court." *Gaither v. Beam Partners, LLC*, No. 3:16-CV-094-GFVT, 2017 WL 1217166, at *2 (E.D. Ky. Mar. 31, 2017).

In assessing whether joinder was fraudulent, the Court employs "a test similar to, but more lenient than, the analysis applicable to a Rule 12(b)(6) motion to dismiss." *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 433 (6th Cir. 2012). As with a 12(b)(6) motion, the Court "must resolve 'all disputed questions of fact and ambiguities in the controlling . . . state law in favor of the non[-]removing party.'" *Coyne*, 183 F.3d at 493 (quoting *Alexander*, 13 F.3d at 949). "Courts ordinarily do not consider matters outside the pleadings on a motion to dismiss[.]" *Dunnigan v. Fed. Home Loan Mortg. Corp.*, 184 F. Supp. 3d 726, 734 (D. Minn. 2016) (citing Fed. R. Civ. P. 12(d)).[10] However, in evaluating fraudulent joinder, the Court can pierce the pleadings and

---

[10] "Matters outside the pleadings include 'any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what

5

consider the sort of evidence it would at summary judgment solely "for the limited purpose of determining whether there are 'undisputed facts that negate the [plaintiff's] claim.'" *Casias*, 694 F.3d at 433 (quoting *Walker v. Phillip Morris USA, Inc.*, 443 F. App'x 946, 952-54 (6th Cir. 2011)).[11]

*Morris Could Conceivably Make a Successful Claim Against Higgins Under State Law*

A fraudulent joinder finding requires that there be no conceivable basis for the plaintiff to recover against the named defendant under state law. *Coyne*, 183 F.3d at 493; *Christensen*, 24 F. Supp. 3d at 613. A necessary corollary of this rule is that a fraudulent joinder determination generally requires adequate clarity in the pertinent substantive state law. *Collins v. Montpelier U.S. Ins. Co.*, No. CIV. 11-166-ART, 2011 WL 6150583, at *1 (E.D. Ky. Dec. 12, 2011) ("[U]ntil Kentucky's courts decide the question, federal courts are left to wonder. Because of this ambiguity, the Court cannot find that Plaintiffs [ ] fraudulently joined Defendant[.]").

Here, the central issue is a manager's individual liability to an injured invitee under Kentucky law. The pivotal case on this question is *Grubb v. Smith*, 523 S.W. 3d 409 (Ky. 2017). In *Grubb*, the plaintiff broke her ankle, wrenched her knee, and spilled hot coffee all over herself after tripping on an "eroded patch of asphalt" at a Speedway gas station. 523 S.W. 3d at 412. She then sued Speedway and Roxanne Smith, the manager of the gas station, for negligence. *Id.* at 411-12. The Supreme Court of Kentucky split evenly, between two dueling opinions from Justice Hughes and Justice Venters, as to whether the manager was individually liable to the third-party

---

is said in the pleadings.'" *Dunnigan*, 184 F. Supp. 3d at 734 (quoting *Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir.1992)).

[11] The Court does agree with Defendants' contention that "fraudulent joinder does not require proof of fraud." DE 23 at 17.

plaintiff.[12] *See also Greer v. Kaminkow*, No. 17:17-cv-120-REW-EBA, 2019 WL 2870092, at *9 n.16 (E.D. Ky. July 3, 2019) (discussing the differing opinions in *Grubb*).[13] As a result, any review here should proceed with caution. "The landscape in Kentucky on manager liability is only as clear as a 3-3 split." *Clark v. Lowe's Home Centers, LLC*, No. 6:19-CV-114-REW, 2019 WL 5092941, at *4 (E.D. Ky. Oct. 11, 2019).

Defendant makes two distinct arguments to support his motion to dismiss. The first is that he "cannot be held liable as a premises owner because he lacked control over the alleged transient condition involved in Plaintiff's incident." DE 8 at 4. The second is that "Higgins cannot be held liable because he had no duty to remedy or warn against the alleged lotion on the floor." DE 8 at 4. Neither argument meets the "heavy burden" of demonstrating that Higgins has been fraudulently joined. *Kent State Univ. Bd. of Trs.*, 512 F. App'x at 489–90.

The Court pauses to note the state of and content of the record. The Complaint alleges only that Morris fell when she encountered a "puddle of a slippery substance" on the Walmart floor. DE 1-3 at 4 ¶ 9. Higgins tries to inject facts outside the pleadings, such as an unauthenticated incident report. *See* DE 8 at 2 n.1. The Court, mindful that it may deviate from the pleadings only for the "for the limited purpose of determining whether there are 'undisputed facts that negate the [plaintiff's] claim[,]'" resists that effort in this procedural context. *Casias*, 694 F.3d at 433 (quoting

---

[12] Justice Van Meter had taken part in the Court of Appeals decision, so he recused at the Supreme Court, leaving the even, and ultimately, evenly divided, six to decide.

[13] Because the Supreme Court did not reach a majority on this question, the Court of Appeals panel's decision to excuse the manager from liability because "her position with Speedway did not give her the sort of control and supervision over the premises that would render her liable as a possessor" was left in place. *Grubb*, 523 S.W. 3d at 421; *see also Smith v. Grubb*, No. 2011-CA-223-MR, 2014 Ky. App. Unpub. LEXIS 1045, at *32 (Ky. Ct. App. Sept. 26, 2014). *Grubb* ping ponged between state and federal court before beginning its long and winding trip through the Kentucky appellate apparatus. Accordingly, its procedural history is rich with varying legal perspective and opinions.

*Walker*, 443 F. App'x at 955-56). Here, nothing in the record meets this high bar. As a result, the Court, now querying the potential for merit in Plaintiff's claim (rather than weighing the merit of that claim), limits its review to the sparse record provided by the pleadings. Further, even if considered, the Higgins Affidavit functions only to deny his presence, "control," any causal role, and any ability to warn in a conclusory and non-specific way. DE 8-2. Although conceding his role as manager at the store, Higgins does not address, and the record does not contain, anything particular regarding his duties, responsibilities, oversight of the store, role in safety protocols or systems, role in inspections and maintenance, or authority over Walmart staffing and operations pertinent to the subject matter at issue. Rather, the Affidavit tracks some *Grubb* watchwords with no tether to details. DE 8-2. The Complaint avers that Higgins, as a Walmart employee or contractor, had the duty to maintain, supervise, and inspect the premises "to ensure" that its floors were "clean," "dry," "free from substances," and "safe." DE 1-3 at 5 ¶¶ 18,19. The precise mechanics of injury are not in the (cognizable) record. The precise role and authority of Higgins are likewise uncharted. Higgins's liability will likely hinge on what discovery reveals about these not-yet answered questions of fact.

*Evaluating Manager Liability to Third Parties Requires a Case-by-Case Determination Based on the Manager's Duties and the Instrument of Injury*

Defendant Higgins argues that Morris cannot make a successful claim against him because "long-standing Kentucky law" precludes him from being "held liable as a possessor of land because he lacked substantial control over the alleged injury-causing condition." DE 8 at 4. The Court agrees with the narrow proposition that the Hughes opinion in *Grubb* supports the argument that Morris has no colorable basis for a claim against Higgins as a premises owner or possessor of

8

land. *Grubb,* 523 S.W. 3d at 422-23.[14] However, "the fact that [an agent is] *not* the 'possessor' of the premises in the same sense that [the principle] *is* the 'possessor' does not mean that [the agent] has no potential liability" to third parties in premises liability suits. *Id.* (emphasis in original). In *Grubb*, both Justice Hughes and Justice Venters accepted the baseline premise that an employee could conceivably "be deemed liable to a business invitee for [his] failure to perform employment duties pertaining to the business premises[.]" *Id.* at 427 (Hughes, J.); *see also* 433-35 (Venters, J.). Their split was instead over *when* and under *what* conditions to assign liability. *Id.* at 426-27. Accordingly, and based on Kentucky's premises-liability lineage, manager liability questions are resolved on a case-by-case basis after fact dependent analysis. *Id.* at 427; *Ashley v. Wal-Mart Stores East, LP, et al.,* No. 6:20-CV-106-CHB, 2020 WL 7646972, at *4 (E.D. Ky. Dec. 23, 2020).

Defendant relies heavily on Justice Hughes's opinion in *Grubb* to argue that Higgins's absence from the store on the date of injury means that he, as a matter of law, lacked the requisite control for liability.[15] That conclusion does not follow from Justice Hughes's opinion. The standard proposed by Justice Hughes that Defendant now invokes as a liability shield is better understood as requiring a fact-dependent analysis to answer the difficult question of whether a particular land possessor's agent should be liable "to third persons for the agent's nonfeasance[.]"

---

[14] In *Grubb*, Justice Hughes distinguished the duties of the land possessor's agent from the duty of the land possessor. 523 S.W. 3d at 422 ("Speedway, the occupier and controller of its [] filling station, is clearly the 'possessor' of the premises and therefore the party upon whom falls the possessor's duty to maintain the premises in a reasonably safe condition."). The land possessor has a non-delegable "duty to an invitee to discover unreasonably dangerous conditions on the land and either eliminate or warn of them." *Id.* (quoting *Shelton v. Kentucky Easter Seals Society, Inc.*, 413 S.W.3d 901, 909 (Ky. 2013)). That duty, at least in Justice Hughes's view, does not automatically pass through from the possessor to its agent. *Id.* (quoting *Dick's Sporting Goods v. Webb,* 413 S.W.3d 981, 897 n.16 (Ky. 2013)). Land possessor liability is related to, but distinct from, the *agent* liability question raised here.
[15] *See also* DE 23 at 5 (Defendants' Response in Opposition to Plaintiff's Motions to Remand) ("The clear and well-established rule in Kentucky is that control is required to impute liability to a land possessor's agent or employee in a premises liability action.").

9

*Grubb*, 523 S.W. 3d at 427 (Hughes, J.). Noting that many of the older cases tied liability to an agent's control over the injury-causing implement or condition, Justice Hughes reasoned that individual manager liability should attach only when the manager had "sufficient control over the premises to remedy the premises' alleged defect." *Id*. at 425. But, whether a particular agent had "sufficient control over the premises" is a fact-dependent inquiry to be resolved considering the manager's responsibilities and the object of injury. *Id*. at 427. ("[W]e have not attempted to state in a general and comprehensive way . . . when an employee's employment omission subjects the employee to third-party tort liability."); *see also Ashley,* 2020 WL 7646972, at *4. In *Grubb*, Justice Hughes concluded that, based on the instrument of injury (pothole) and the Speedway manager's "limited managerial position, especially with regard to premises maintenance[,]" the manager had "nowhere near the control that has been deemed necessary" for third-party liability. *Id*. This is to say nothing of the equally weighted Venters view. Justice Venters focused on managerial authority, the person's "specific responsibilities," *id.* at 434, in the context of the particular incident. Thus, in measuring the agent's potential duty, Justice Venters scrutinized the role of "the manager in charge of the store," *id.* at 432, and the employee with "managerial control of the premises." *Id.* at 433. These issues have virtually no development in this record.

It would be an overbroad misapplication of Justice Hughes's position in *Grubb* to conclude that it leaves Morris with no glimmer of hope in a claim against Higgins because Higgins was absent on the date of injury. DE 8 at 7. Justice Hughes did not propose that control hinges narrowly on physical presence. Indeed, as Higgins notes, the manager was not in the store at the time the plaintiff in *Grubb* fell. 523 S.W.3d at 427 n.19. Rather, the Court must examine Higgins's actual role and responsibilities as manager, relative to a situation here offering almost no details with respect to accident mechanics. What was Higgins's role and authority? What were the

safety/inspection rules, and did Higgins implement them? Did staffing, store geography, or display/advertisement have any role in the event? What did Higgins do relative to those matters? The record contains nothing particular on these queries. Higgins simply claims that, because he was on vacation on the fateful day, there is no possibility he could have liability under Kentucky law. The *Grubb* case does not support that expansive notion of immunity.

Control is a fact-laden idea, and the record contains nothing to reify the topic relative to Higgins. Justice Hughes, terming the analysis "quite difficult," focused on the control of the particular employee with respect to the particular defect. *Id*. at 424-25 ("[L]iability is more apt to attach the more control the agent has over the injury-causing implement or condition."). The opinion suggests that a manager's **plenary** control **could** support a duty to third persons, where the servant is "the custodian, in complete charge and control of the premises, given the duty by the master to see that the particular defect does not exist and vested by the master with authority to correct this defect." *Id*. (quoting *S.H. Kress & Co. v. Selph*, 250 S.W.2d 883, 893 (Tex. Civ. App. 1952)). The minimal level of control would be that needed "to remedy the premises' alleged defect." *Id.* By contrast, Justice Venters cast the manger in control as, in effect, the flesh and blood personification of the entity itself. As the actor fulfilling the employer's nondelegable duty, the manager, at least one with "managerial control of the premises," owes a standard of care by virtue of being the master's "eyes and ears on the premises at the time of the injury." *Id.* at 432-433. Being the "manager in charge" thus potentially carries the duty to execute the employer's overarching duties of reasonable care with respect to the premises. Both Justices looked carefully

11

at the manager's actual role, authority, maintenance duties, inspection and repair power, and discretion. The record here does not permit the type of detailed scrutiny dictated by *Grubb*.[16]

For similar reasons, Defendant's invocation of *Beasley v. Kaelin* is not convincing. No. 2017-CA-924-MR, 2019 WL 4565545 (Ky. Ct. App. Sept. 20, 2019), *review denied* (Apr. 22, 2020). In *Beasley*, the plaintiff slipped on recently waxed floors at the Jefferson Circuit Court Clerk's Drivers' Licensing Office. *Id.* at *1. She then sued, in their individual capacities, the clerks who staffed the office along with the firm contracted to wax the floors for failure to maintain the property in a safe condition, failure to warn of the hazard, and failure to close the premises. *Id.* The Circuit Court granted the clerks' motion for summary judgment because there was no basis for plaintiff's claims to succeed since the clerks "owed no duty to maintain [the office] in a reasonably safe condition or warn of any dangerous conditions in their individual capacities." *Id.* at *2. Also, "[u]nlike the manager in *Grubb*, the clerks were not required to inspect or clean the premises. Furthermore, the clerks were not authorized to adjust the thermostat and, according to [the clerks], were not authorized to shut down the building due to the excessive heat." *Id*. at 4. Thus, rather than support Defendant's motion to dismiss, *Beasley* makes clear why it must be denied. The Court arrived at its conclusion only after reviewing the cause of the injury and the defendants' job responsibilities. Importantly, the public area at the location in *Beasley* was a common space shared by multiple entities; the employees had no role or authority with respect to maintenance or inspection of the office premises or the public area. There is at least a reasonable chance that a state court could find that Higgins's duties, once discovered—such as store-wide

---

[16] Higgins makes categorical denials—of causation, knowledge, and control—relative to "any alleged transient condition on the floor." DE 1-2. The Court believes, per the cases, that these conclusions oversimplify and skirt the type of specific analysis that *Grubb*, under either opinion, requires.

managerial control—are sufficiently distinct from those of the clerks to justify Morris's claim.[17] Again, the answer hinges on the details of the fall and the details of Higgins's management job, role, and reach. Fraudulent joinder depends not on whether Morris should recover from Higgins but whether she reasonably *might*. *Coyne*, 183 F.3d at 493; *Christensen*, 24 F. Supp. 3d at 613. Defendant suggests in essence that Justice Hughes's opinion in *Grubb* compels the conclusion that Higgins's absence from the store on the day of the injury absolutely precludes Morris's claim. Based on the existing body of state law, the Court cannot agree.[18]

### *State Law Does Not Clearly Establish that Higgins Owed No Affirmative Duty to Morris*

Defendant Higgins also argues that Morris can make no colorable claim against him "because he had no duty to remedy or warn against the alleged hazardous condition (lotion on the floor) that he did not cause or create." DE 8 at 7. It is true that an individual typically has no duty to remedy or warn others about conditions he did not cause or create. *Grubb,* 523 S.W.3d at 426 (quoting *Restatement (Third) of Torts § 37* (2012)). But in the context of this suit, Higgins is not merely an individual. He is also a managerial employee of the land possessor, Walmart. And "under the long-standing law of [Kentucky], 'a possessor of land owes a duty to an invitee to discover unreasonably dangerous conditions on the land and either eliminate or warn of them.'"

---

[17] Defendant also points to *Sabiston's Adm'r v. Otis Elevator Co.*, 64 S.W.2d 588 (1933). DE 8 at 6. In *Sabiston's*, the Court of Appeals of Kentucky found that that a rent collector and elevator installer lacked sufficient control to justify liability for a death caused by "an excessive space" between an elevator and its building. 64 S.W.2d 588 (1933). Given its age and the significantly different underlying facts, it has limited utility in a suit involving allegations of loose lotion in a store aisle. At the very least, it "clearly cannot be a better guide to Kentucky employee negligence law than Grubb." *Ashley,* 2020 WL 7646972, at *7.

[18] It is notable to the Court that *Grubb* and *Beasley* are merits decisions on thoroughly developed records. *Grubb* involved a trial, and *Beasley* was a summary judgment case. Here, Higgins seeks a threshold decision, on a slight record and as a matter of law, as to what the cases depict as a fact-particular inquiry.

*Grubb*, 523 S.W.3d at 422 (quoting *Shelton*, 413 S.W.3d at 909). The question then raised by Defendant's argument is one discussed, but not comprehensively resolved, in *Grubb*: "to what extent, if any, does [an agent's] employment relationship [with a land possessor] impose upon [him] an affirmative duty . . . to protect third persons, a duty that, outside the employment relationship, [the agent] does not have." *Id*. at 426.

In *Grubb*, Justice Hughes and Justice Venters disagreed over the congruency of employee and employer liability. *Id*. (Hughes, J.) (suggesting that Justice Venters would hold an employee individually liable for damage arising from any neglect of the employee's employment duties that caused a breach in the employer's affirmative duty). Of course, in *Grubb*, the manager was subjectively aware of the pothole. *Id*. at 434 (Venters, J). Here, there is no allegation or reason to believe that the Defendant was aware of the liquid on the floor. DE 23 at 2-3.

To support his argument, Defendant relies again on *Beasley* (discussed above, involving a suit against office clerks for injuries caused by the office's waxed floors). In *Beasley*, the Kentucky Court of Appeals concluded that the clerks had no affirmative duty to warn of a condition that they did not create because they, "[u]nlike the manager in *Grubb*, . . . were not responsible for maintaining the premises or providing janitorial services." *Beasley*, 2019 WL 4565545, at *3. Again, in the Court's view, the record does not permit enough analysis to fathom the merits. We do not know, with any degree of confidence or precision, how or why the fall occurred. We do not know, at all, Higgins's (as manager of the premises) influence and burdens with respect to safety, inspections, oversight, training, and store layout. The legal standards are cloudy enough in light of the *Grubb* ambivalence. With no factual meat on the bones in this case, the Court certainly cannot reject categorically the notion that Higgins could bear some responsibility for or have a duty with respect to the fall precipitating this case. Any conclusion on the merits would require

speculation, and if there are doubts, they resolve in Morris's favor and against fraudulent joinder. *Coyne*, 183 F.3d at 493.[19]

Despite the extent to which this second citation to *Beasley* blurs with the first, the underlying legal question raised by Defendant's second argument is the extent to which an employee is tied to his employer's affirmative duty to "an invitee to discover unreasonably dangerous conditions on the land and either eliminate or warn of them." *Id.* at 432 (quoting *Shelton*, 413 S.W.3d at 909). Because Kentucky law does not clearly answer that question—as evidenced by the split pluralities in *Grubb*—there is no basis to conclude that Morris has no glimmer of hope against Higgins.

### III. The Presence of Defendant Higgins Destroys Diversity and Therefore Leaves the Court Without Jurisdiction over this Dispute

Because both Higgins and Morris are Kentucky citizens, Higgins's presence in this suit precludes the Court's jurisdiction under § 1332. *Coyne*, 183 F.3d at 492. Accordingly, the Court grants Plaintiff's motion to remand. DE 19. *See also* DE 21.  Simply put, *Grubb* shows at least two paths to liability against a management employee. Whether any successful path exists is a matter for particular analysis; the record here does not foreclose Plaintiff's claim.  As such, resolving legal ambiguities and the facts of record in Morris's favor, the Court rejects application of fraudulent joinder to spare jurisdiction.  Although the Court views this case as a closer call than

---

[19] The other cases cited to by Defendant do not provide the requisite certainty under state law to establish fraudulent joinder. *Coyne*, 183 F.3d at 493; *Christensen*, 24 F. Supp. 3d at 613. In *Gayheart v. Wal-Mart, Inc.*, the nondiverse defendant was a store employee, not a manager. No. 7:18-cv-096-GFVT, 2018 WL 6028702 (E.D. Ky. Nov. 15, 2018); *see also Ashley,* 2020 WL 7646972, at *7 (distinguishing *Gayheart* from a suit against a manager in a slip-and-fall case). Neither *Benjamin v. Wal-Mart Stores, Inc.*, 413 F. Supp. 2d 652 (D.S.C. 2006) nor *Carino v. Wal-Mart Louisiana, LLC,* No. CIV.A. 05-1978, 2006 WL 335784 (W.D. La. Feb. 9, 2006) deals with the application of Kentucky law—the key issue in the present dispute. As a result, they are of limited utility.

15

those in *Grubb* and *Clark* (given differences in the apparent nature of the defect), inclusion of the manager here, based on the alleged managerial authority and scope of responsibility, still is colorable and asserts a claim, at this stage and on this record, with a qualifying minimal glimmer of hope under the state of Kentucky law.

### IV. Plaintiff is Not Entitled to an Award of Attorney Fees Because Defendants Had an Objectively Reasonable Basis to Seek Removal

Plaintiff moves for attorney fees pursuant to 28 U.S.C. § 1447(c), which allows for the Court to award "just costs and any actual expenses, including attorney fees" to the non-removing party in an order to remand. Plaintiff supports the request by noting that "Defendants' removal prima facie fails for fraudulent joinder as Defendants have not cited an unambiguous law made by Kentucky's highest court." DE 6. Plaintiff also notes the burden incurred by the state court prior to the motion for removal. DE 6. In another motion, Plaintiff alleges that "Defendants' amount in controversy burden is not met and is objectively made in bad faith." DE 10 at 7. Defendants oppose the motion, arguing that their motion to remove was "proper and supported by an objectively reasonable basis." DE 14.

Defendants have the stronger argument. "[F]ee awards are inappropriate unless 'the removing party lacked an objectively reasonable basis for seeking removal.'" *Powers v. Cottrell, Inc.*, 728 F.3d 509, 515 (6th Cir. 2013) (quoting *Martin v. Franklin Capital Corp.* 546 U.S. 132, 139 (2005)). They are the exception, not the norm. *Paul v. Kaiser Found. Health Plan*, 701 F.3d 514, 523 (6th Cir. 2012). Thus, absent "unusual circumstances" a court should not award fees. *Powers*, 728 F.3d at 515. Charging headlong into clearly opposing state law is objectively unreasonable. Here, that is not what happened. Defendants' motion was not undeniably ill-fated. As the Court has previously noted, *Grubb* is a "tough study." *Clark*, 2019 WL 5092941, at *3. This area of state law is subject to debate and interpretation. The scenario, particularly with an

16

absent manager and an alleged transient hazard, is not so doubtful as to warrant fees. Plaintiff also alleges that Defendants' amount in controversy burden is "not met and is objectively made in bad faith." DE 10. Surely, that cannot be the case, given that Plaintiff, in the sentence immediately preceding that one, conceded that "the odds of reaching the amount threshold at best would be 50-50." DE 10 at 7. Moreover, given Plaintiff's answers to her interrogatories indicating that she could seek well over $75,000 in damages (DE 14-1 at 8), it was reasonable for Defendants to declare the amount in controversy threshold met; it was met. *Sanford*, 2000 WL 1033025, at *3. For these reasons, the circumstances here do not warrant granting Plaintiff's motion for an award of attorney fees.

Accordingly, the Court **GRANTS** DE 19 and ORDERS as follows:

1. The Court **REMANDS** this matter to Perry Circuit Court; and

2. The Court **DENIES** the DE 8 Motion to Dismiss;

3. The Court **DENIES** the DE 6 Motion for Attorney Fees; and

4. The Court **DIRECTS** the Clerk to strike this matter from the Court's active docket.

This the 20th day of January, 2021.

Signed By:
<u>Robert E. Wier</u>
United States District Judge